1  TIMOTHY S. BLACKFORD (Bar No. 190900)
   VERONICA L. JACKSON (Bar No. 243095)
2  DLA PIPER US LLP
   401 B Street, Suite 1700
3  San Diego, CA 92101-4297
   Tel: 619.699.2700
4  Fax: 619.699.2701

5  SAMUEL B. ISAACSON (*Pro Hac Vice*)
   PETER M. ELLIS (*Pro Hac Vice*)
6  DLA PIPER US LLP
   203 N. LaSalle Street, Suite 1900
7  Chicago, IL 60601-1263
   Tel. 312.368-4000
8  Fax: 312.236-7516

9  Attorneys for Plaintiffs
   MAIL BOXES ETC., INC. and UNITED PARCEL
10 SERVICE OF AMERICA, INC.

11                  UNITED STATES DISTRICT COURT

12              SOUTHERN DISTRICT OF CALIFORNIA

13

14 MAIL BOXES ETC., INC., and UNITED          Case No. 08-CV-1383 LAB (BLM)
   PARCEL SERVICE OF AMERICA, INC.
15                                              **MAIL BOXES ETC., INC.'S *EX PARTE***
                Plaintiffs,                     **APPLICATION FOR TEMPORARY**
16                                              **RESTRAINING ORDER; MEMORANDUM**
        v.                                      **OF POINTS AND AUTHORITIES IN**
17                                              **SUPPORT OF APPLICATION FOR**
   UNITED POSTAL BUSINESS CENTER,               **TEMPORARY RESTRAINING ORDER**
18 JOSEPH CHAN, individually, STANLEY
   CHAN, individually,                          Date:  August 18, 2008
19                                              Time:  12:00 p.m.
                Defendants.                     Judge: Hon. Larry Burns
20                                              Place: Courtroom 9

21                                              **ORAL ARGUMENT REQUESTED**

22

23

24

25

26

27

28

DLA PIPER US LLP
  SAN DIEGO        CHGO1\31248828.4                                    08-CV-1383 LAB (BLM)

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

STATEMENT OF FACTS................................................................................................1

    Defendants' Unauthorized Use of the Marks ........................................................3

ARGUMENT....................................................................................................................6

    I.    MBE IS ENTITLED TO A TEMPORARY RESTRAINING ORDER ON ITS SECTION 43(a) CLAIM ...............................................................6

        A.    MBE Has A Strong Probability Of Success On The Merits............7

            1.    *The Marks Are Valid And Protectible Trademarks* ............7

            2.    *SPI' Continued use Of The MBE Marks Is Likely To Confuse Consumers* ...............................................................9

        B.    MBE Will Suffer Irreparable Harm If The Requested Temporary Restraining Order Is Not Granted And There Is No Adequate Legal Remedy ...............................................................11

        C.    The Balance of Hardships Tips Sharply In MBE's Favor.............12

        D.    Granting A Temporary Restraining Order In Favor Of MBE Advances The Public Interest ...............................................................14

CONCLUSION ...............................................................................................................14

1

# TABLE OF AUTHORITIES

2

## CASES

3   *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629 (9th Cir. 2007) ...............10

4   *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979) .........................................9, 10

5   *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F.2d 521 (9th Cir. 1984) ...............11, 12

6   *Applied Info. Sci. Corp. v. eBay, Inc.*, 511 F.3d 966 (9th Cir. 2007) .............................8, 9

7   *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062
          (9th Cir. 2006)........................................................................................9, 10, 11

8

9   *Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036
          (9th Cir. 1999).............................................................................................7, 9, 11

10  *Burger King Corp. v. Majeed*, 805 F. Supp. 994 (S.D. Fla. 1992) ....................................13

11  *Cadence Design Sys. Inc. v. Avant! Corp.*, 125 F.3d 824 (9th Cir. 1997) .........................13

12  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175 (9th Cir. 1988).........................6

13  *Church of Scientology Int'l v. Elmira Mission*, 794 F.2d 38 (2d Cir. 1986) .....................6

14  *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135 (9th Cir. 2002) .................................10

15  *Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325
          (7th Cir. 1977).........................................................................................................13

16

17  *Johnson Controls, Inc. v. Phoenix Control Sys., Inc.*, 886 F.2d 1173
          (9th Cir. 1989).........................................................................................................12

18  *Hollywood Athletic Club Licensing Corp. v. Ghac-Citywalk*, 938 F. Supp.
          612 (C.D. Cal. 1996)...............................................................................................12

19

20  *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596
          (9th Cir. 2005)...........................................................................................................7

21  *Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585 (D.D.C. 1994) ......................13

22  *Lozano Enters. v. LA Opinion Publishing Co.*, No. 96-cv-5969, 1997 U.S.
          Dist. LEXIS 20372 (C.D. Cal. July 30, 1997) .........................................................9

23

24  *Malarkey-Taylor Assocs., Inc. v. Cellular Telecommunications Indus. Ass'n*,
          929 F. Supp. 473 (D.D.C. 1996).............................................................................13

25  *Nichols v. Deutsche Bank Nat'l Trust Co.*, No. 07-cv-2039, 2007 WL 4181111
          (S.D. Cal. Nov. 21, 2007) .........................................................................................6

26

27  *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154
          (C.D. Cal. 2000).......................................................................................................12

28  *Phillip Morris Inc. v. Allen Distribs.*, 48 F. Supp. 2d 844 (S.D. Ind. 1999).....................13

-ii-

*Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067 (C.D. Cal. 2004)....................14

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132 (9th Cir. 1986)..........................13

*Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944
    F.2d 597 (9th Cir. 1991) ........................................................................................6

*Resource Leaders, Inc. v. Source Solutions, Inc.*, 404 F. Supp. 2d 1232
    (E.D. Cal. 2005)..............................................................................................13, 14

*Roe v. Anderson*, 134 F.3d 1400(9th Cir. 1998) ......................................................6

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004) ............................11

*Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625 (9th Cir. 2005)..................9

*Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894 (9th Cir. 2002)..............................10

*Tillamook County v. U.S. Army Corps. of Engineers*, 288 F.3d 1140
    (9th Cir. 2002)........................................................................................................6

*United Parcel Service of America, Inc. v. Package America, Inc.*,
    No. 96-cv-01252, 1996 WL 376610 (N.D. Cal.
    May 9, 1996)......................................................................................................8, 9

*Wrobel v. S.L. Pope & Assocs.*, No. 07-cv-1591, 2007 U.S. Dist. LEXIS
    59779 (S.D. Cal. Aug. 15, 2007) ..........................................................................6

## STATUTES

15 U.S.C. § 1065....................................................................................................8

15 U.S.C. § 1115(a) ...............................................................................................7

15 U.S.C. § 1125(a) ............................................................................................7, 9

## TREATISE

3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23.3
    (4th ed. 2002)......................................................................................................11

DLA PIPER US LLP
SAN DIEGO

CHGO1\31248828.4

08-CV-1383 LAB (BLM)

1        PLEASE TAKE NOTICE THAT Plaintiff Mail Boxes Etc., Inc. will and hereby does

2    bring this *ex parte* application for a temporary restraining order against Defendants.

3        This application is made pursuant to Rule 65 of the Federal Rules of Civil Procedure.  The

4    grounds for the application are set forth below.  The application is based on this Application and

5    Memorandum of Points and Authorities in Support of Application, the Verified Complaint and

6    Exhibits, the Declarations of Don Higginson, Nancy Pemberton, Robert D. Rodriguez, and Peter

7    M. Ellis and Exhibits, and whatever other evidence and argument the court will hear.

8        Pursuant to Rule 83.3(h)(2) of the Local Rules for the Southern District of California,

9    Defendants have been advised of the *Ex parte* Application as detailed in the Declaration of Peter

10   M. Ellis filed concurrently herewith.

11                              **INTRODUCTION**

12       In this action for the entry of a temporary restraining order, Plaintiff Mail Boxes Etc., Inc.

13   ("MBE" or "Plaintiff") seeks, among other things, to temporarily restrain Defendants United

14   postal Business Center ("UpBC"), Joseph Chan and Stanley Chan (collectively, the "Chans" or

15   the "Defendants") unlawful misuse of certain proprietary trade names and marks in connection

16   with their UpBC businesses (the "Marks").  UpBC is a competing postal, packaging, business and

17   communication retail service center, owned and operated by the Chans, who are also current

18   MBE franchisees.

19       Despite Plaintiff's demands to cease the unauthorized use of the trademarks, Defendants

20   continue to conduct UpBC business utilizing, among other things, the Marks without Plaintiff's

21   authorization or consent.  In order to protect Plaintiff's goodwill, as well as the public from the

22   inevitable confusion occasioned by Defendants' infringement upon the Marks, MBE respectfully

23   requests that Defendants be temporarily restrained from using the Marks pending further order of

24   Court.

25                          **STATEMENT OF FACTS**

26       MBE is a corporation organized and existing under the laws of the State of Delaware with

27   its principal place of business at 6060 Cornerstone Court West, San Diego, California.  MBE is

28   the world's largest franchisor of independently owned and operated postal, packaging, business

1   and communication retail service centers, under the Mail Boxes Etc.® and The UPS Store® marks,

2   with more than 800,000 mailbox holders in the United States and thousands of locations

3   worldwide, offering mail and parcel receiving, packaging and shipping services and providing

4   small businesses with a wide range of products and services across the United States and

5   throughout the world. (Verified Compl. ¶ 4; Don Higginson Decl. ¶ 3.)

6        Since it was founded in 1980, MBE has continuously conducted its business by

7   franchising a standard, unique and uniform system for conducting the postal, business, and

8   communications centers. (Verified Compl. ¶ 11; Higginson Decl. ¶ 7.)  Throughout its existence,

9   MBE has offered and provided services including: mailbox services with 24 hour access; copy

10  services; binding and laminating services; specialty paper services; fax services; postal services;

11  parcel shipping; freight shipping; packaging services; sale of shipping, packaging, mailing

12  supplies and office supplies; printing services; notary services; passport photograph services;

13  computer time rental; online services; among other services. These businesses are identified and

14  promoted to the general public under the trademark, service marks  and trade names MAIL

15  BOXES ETC., MBE MAIL BOXES ETC., and The UPS Store®.  (Verified Compl. ¶ 11;

16  Higginson Decl. ¶ 4.)

17       MBE grants franchises to qualified persons to own and operate franchise centers at

18  specific locations and licenses authorized franchisees to use MBE's  proprietary trade names,

19  trade and service marks, logos, know-how and expertise within an exclusive territory designated

20  in the franchise agreement. (Verified Compl. ¶ 21; Higginson Decl. ¶ 8.)  MBE provides its

21  franchisees with proprietary property, equipment and information, including its MBE operating

22  manuals, for use exclusively in connection with the operation of a franchised Mail Boxes Etc.® or

23  The UPS Store® Center.  (Verified Compl. ¶ 22; Higginson Decl. ¶¶ 14-17).  MBE franchise

24  centers are operated *via* uniform format, signs, equipment, layout, systems, methods, procedures

25  and designs, offer uniform products, and utilize certain trademarks, service marks, trade dress and

26  other commercial symbols, including "THE UPS STORE®."  (Verified Compl. ¶ 23; Higginson

27  Decl. ¶ 12.)

28  /////

1    With thousands of Mail Boxes Etc.® and The UPS Store® franchisees nationwide, MBE is

2    the predominant leader in this industry.  (Verified Compl. ¶ 24; Higginson Decl. ¶ 7.)  Through

3    its more than twenty years of experience, MBE has developed unique, proprietary business

4    knowledge upon which the franchisee business model is specifically formulated.  (Verified

5    Compl. ¶ 24; Higginson Decl. ¶ 7.)  This information is shared with MBE's carefully selected

6    franchisees through training and continuous business support, and provides the foundation upon

7    which MBE franchisees successfully operate postal, business and communications centers in

8    markets throughout the United States and abroad.  (Verified Compl. ¶ 2; Higginson Decl. ¶ 7.)

9    United Parcel Service of America, Inc. ("UPS") is a corporation organized and existing

10    under the laws of the State of Delaware with its principal place of business at 55 Glenlake

11    Parkway NE, Atlanta, Georgia 30328.  (Verified Compl. ¶ 5.)  UPS is the owner of the Marks at

12    issue in this case and licenses those marks to MBE.  MBE is a wholly-owned subsidiary of UPS.

13    (Verified Compl. ¶ 4.)

14    Defendants Joseph Chan and Stanley Chan are citizens of the State of California and since

15    September 12, 2003, have owned and operated a The UPS Store® branded franchise pursuant to a

16    written franchise agreement located at 180 Golf Club Road, Pleasant Hill, California ("Center

17    2701") (Verified Compl. ¶ 27.)  UpBC is a California corporation, owned and operated by the

18    Chans (Verified Compl. ¶ 8.)

19                        **DEFENDANTS' UNAUTHORIZED USE OF THE MARKS**

20    Sometime between 2004 and 2007, the Chans began operating four UpBC businesses

21    while also operating Center 2701 in violation of the in-term obligations of the Chans' franchise

22    agreement for Center 2701.  (Verified Compl. ¶ 37.)  The UpBC businesses offer nearly the

23    identical services as an authorized The UPS Store® franchise location, including, among other

24    things, packing, shipping and copying services.  (Verified Compl. ¶ 38.)  In fact, the UpBC

25    website (www.upbc.biz) boasts:

26                        We are one of the largest shippers of UPS in Contra Costa County...
                        We specialized [sic] in packaging and shipping electronic
27                        equipment, antiques, and many hard to ship items... We offer the
                        following services:

28

- Mobile Notary Public Services
- Offer lowest UPS retail shipping rate
- FREE quotes and pickup for business accounts
- One of the largest shipping and packaging materials suppliers
- Sales inserts and coupons design and bulk mailing services
- Friendly, courteous and well-trained professional staff
- Expert packaging services for all your fragile items
- Oversize freight shipments - anywhere in the world!
- Full or self services copying and binding services

A true and correct copy of the UpBC website is attached to the Verified Complaint as Exhibit D.

Defendants also advertise to the consuming public that the UpBC locations are UPS authorized shipping outlets ("ASOs"). A true and correct copy of photographs of the San Leandro and Berkley UpBC locations is attached to the Verified Complaint as Exhibit E. (Verified Compl. ¶ 40; Pemberton Decl. ¶ 5, Ex. 1.) In conducting the UpBC business, Defendants have placed UPS signage in the interior of the stores and in the windows of the businesses without obtaining authorization to do so. (Verified Compl. ¶ 41; Pemberton Decl. ¶¶ 5-6, Ex. 1.) In fact, UPS has not granted ASO status to any of the UpBC business locations although the Defendants advertise the businesses to the consuming public as authorized ASOs. (Verified Compl. ¶¶ 40-43.) Without being designated as an ASO, Defendants are not authorized to use or display the Marks in connection with their UpBC businesses. (Verified Compl. ¶ 43; Higginson Decl. ¶¶ 8, 16.) Additionally, in connection with the operation of at least one of the UpBC locations, Defendants have used the same form MBE receipt which bears the Marks and which MBE makes available only to authorized MBE franchisees through MBE proprietary software. (Rodriguez Decl. ¶¶ 4-5, Ex. 1). A true and correct copy of a receipt issued from the Berkley, California UpBC location is attached to the Verified Complaint as Exhibit F and to the Rodriguez Declaration as Exhibit 1.

On July 1, 2008, a cease and desist letter was sent to the Defendants reminding them of their in-term obligations under their franchise agreement for Center 2701 and demanding that the

1    Chans cease all unauthorized use of the Marks. (Verified Compl. ¶¶ 46-50; Higginson Decl. ¶

2    19.) A true and correct copy of the July 1, 2008 Cease and Desist Letter is attached to the

3    Verified Complaint as Exhibit G. Specifically, the July 1, 2008 letter stated:

> As you are well aware, 180 Golf Club Blvd. is, in fact, the designated location of The UPS Store® Center 2701 and yet, you are actively advising MBE customers that the business is both a UpBC store *and* a The UPS Store®. Further, the two additional current UpBC locations are located within close proximity to other MBE Centers. Operation of each of these UpBC stores constitutes a material breach of your obligations under the Non-Competition and Non-Solicitation Agreement (the "Non-Competition Agreement") executed in connection with the Franchise Agreement. Specifically, this conduct violates the in-term contractual obligations of the Non-Competition Agreement, not to "own, maintain, engage in, be associated with, be employed by, advise, assist, invest in, be landlord to, franchise, make loans to or have any interest in any business which is the same or competitive with or substantially similar to any Mail Boxes Etc. or The UPS Store® Center."

12   The July 1, 2008 letter further advised that:

> [I]t is our understanding that you are utilizing MBE's proprietary trade dress and operating systems (including certain signage, printed receipts and the MBE Mailbox Service Agreement, among other things) in connection with your operation of at least one of the UpBC locations. This conduct constitutes a violation of federal and state trademark laws as well as trade secret infringement. MBE demands that you immediately cease all unauthorized use of its Marks and Systems.

18        Finally, the July 1, 2008 letter confirmed that "MBE will not tolerate your unauthorized

19   use of the MBE Marks and Systems or blatant breach of the Non-Competition Agreement and

20   UPS Contract Carrier Agreement." (Verified Compl. ¶¶ 46-50; Higginson Decl., Ex. 1.)

21   Defendants' continued operation of the UpBC locations and use of the Marks in connection

22   therewith has and continues to damage the Marks and MBE's goodwill and reputation.

23        Defendants' continued use of the Marks constitutes a violations of federal and California

24   trademark law. (Verified Compl. ¶¶ 52-104.) Indeed, Defendants' use of the Marks, and in

25   particular, the use on the Mail Boxes Etc. form receipt, is intended to confuse, and will confuse,

26   consumers into believing that the UpBC businesses are ASOs, licensed UPS shippers or affiliated

27   with Plaintiffs. (Verified Compl. ¶¶ 53, 73, 79-80; Higginson Decl. ¶ 18.) Defendants' continued

28

1   use of the Marks in connection with the UpBC businesses has and continues to damage the Marks

2   and UPS' goodwill and reputation.  (Verified Compl. ¶¶ 51, 56, 61, 65, 70, 75, 80; Higginson

3   Decl. ¶ 19.)

4                                           **ARGUMENT**

5   **I.    MBE IS ENTITLED TO A TEMPORARY RESTRAINING ORDER ON ITS**
6         **SECTION 43(a) CLAIM.**

7         Courts generally issue preliminary injunctive relief in trademark infringement cases.

8   *Church of Scientology Int'l v. Elmira Mission*, 794 F.2d 38, 41 (2d Cir. 1986) ("For many years

9   we have consistently held that a preliminary injunction should usually issue when the use of a

10  mark creates a likelihood of confusion in the consumers' minds as to the ownership or

11  sponsorship of a product.").  "Injunctive relief is the remedy of choice for trademark and unfair

12  competition cases, since there is no adequate remedy at law for the injury caused by a defendant's

13  continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180-81 (9th

14  Cir. 1988).

15        An applicant for a temporary restraining order must meet the same standards applicable to

16  the issuance of a preliminary injunction.  *Wrobel v. S.L. Pope & Assocs.*, No. 07-cv-1591, 2007

17  WL 2345036, at *1 (S.D. Cal. June 15, 2007).  The moving party must show either: "(1) a

18  combination of probable success on the merits and the possibility of irreparable injury or (2) that

19  serious questions are raised and the balance of hardships tips sharply in its favor." *Rent-A-*

20  *Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 602 (9th Cir. 1991);

21  *Nichols v. Deutsche Bank Nat'l Trust Co.*, No. 07-cv-2039, 2007 WL 4181111, at *2 (S.D. Cal.

22  Nov. 21, 2007).  These two tests represent two points on a sliding scale in which the required

23  probability of success decreases as the degree of irreparable harm increases.  *Roe v. Anderson*,

24  134 F.3d 1400, 1402 (9th Cir. 1998); *see Tillamook County v. U.S. Army Corps. of Engineers*,

25  288 F.3d 1140, 1143 (9th Cir. 2002) (discussing that "[t]hese are not alternative tests but, instead,

26  are extremes of a single continuum.").  Here, Defendants' unauthorized use of the Marks

27  constitutes a blatant violation of the Lanham Act.  And an injunction in the form of a temporary

28  restraining order must issue to protect MBE's valuable interests in such marks.

**A.    MBE HAS A STRONG PROBABILITY OF SUCCESS ON THE MERITS.**

In the Verified Complaint, MBE has alleged a claim for trademark infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). In order to prevail on this claim, Plaintiffs must establish that: (1) the Marks are owned by it and are valid and legally protectible; and (2) the Defendants use of the Marks to identify goods or services is likely to create confusion concerning the origin of the goods or services. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 601 (9th Cir. 2005); *see also Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). In this case, it is virtually indisputable that the Marks are valid, that Defendants are infringing on those Marks, and that the infringement will result in customer confusion.

**1.    The Marks Are Valid And Protectible Trademarks.**

The federal registration of a trademark with the United States Patent and Trademark Office constitutes "prima facie evidence of the validity of the registered mark . . . and of the registrant's exclusive right to use the registered mark." 15 U.S.C. § 1115(a). UPS is the owner of the following trademarks, to which it has granted an exclusive license to MBE, on the Principal Register of the United States Patent and Trademark Office:

| REGISTRATION /APPLICATION NUMBER | DESCRIPTION OF MARK | PRINCIPAL OR SUPPLEMENTAL REGISTER | REGISTRATION DATE | CLASS |
|---|---|---|---|---|
| 2,884,954 | THE UPS STORE | Principal | Sept. 14, 2004 | 9, 35, 38, 39 |
| 76/442,507 | UPS STORE | Principal | Pending | 9 |
| 76/491,153 | UPS STORE | Principal | Pending | 35, 39 |
| 78/818,815 | TUPSS | Principal | Pending | 36 |
| 2,978,624 | UPS & Stylized Shield Device (b/w) | Principal | July 26, 2005 | 36 |
| 2,978,625 | UPS & Stylized Shield Device (color) | Principal | July 26, 2005 | 39 |
| 2,867,999 | UPS & Stylized Shield Device (b/w) | Principal | July 27, 2004 | 39 |

DLA PIPER US LLP
SAN DIEGO

CHGO1\31248828.4

08-CV-1383 LAB (BLM)

| REGISTRATION /APPLICATION NUMBER | DESCRIPTION OF MARK | PRINCIPAL OR SUPPLEMENTAL REGISTER | REGISTRATION DATE | CLASS |
|---|---|---|---|---|
| 2,868,000 | UPS & Stylized Shield Device (color) | Principal | July 27, 2004 | 9, 16, 22, 35, 38, 42 |
| 2,973,108 | UPS & Stylized Shield Device (b/w) | Principal | July 19, 2005 | 9, 16, 25, 35, 38, 42 |
| 2,981,794 | UPS & Stylized Shield Device (color) | Principal | August 2, 2005 | 9, 16, 25, 35, 38, 42 |
| 2,973,599 | UPS & Stylized Shield Device (color) | Principal | July 19, 2005 | 35, 36, 41 |
| 2,965,392 | UPS & Stylized Shield Device (b/w) | Principal | July 5, 2005 | 35, 36, 41 |
| 78/441,655 | UPS & Stylized Shield Device (b/w) | Principal | Pending | 24, 28 |
| 2549434 | MBEMAIL | 38 | Principal | 3/19/02 |
| 2348287 | MBE | 35 | Principal | 5/9/00 |
| 1505212 | MBE MAIL BOXES ETC Design | 39 | Principal | 9/20/88 |
| 1726118 | MBE & Design | 35, 38, 39 | Principal | 10/20/92 |

UPS' registration and continuous use of the Marks with the United States Patent and Trademark Office grants them "incontestable" status under the Lanham Act, 15 U.S.C. §1065, and the marks are therefore presumptively valid. *See Applied Info. Sci. Corp. v. eBay, Inc.*, 511 F.3d 966, 970 (9th Cir. 2007) ("Registration … discharges the plaintiff's original common law burden of proving validity in an infringement action."); *United Parcel Service of America, Inc. v. Package America, Inc.*, No. 96-cv-01252, 1996 WL 376610, at *2 (N.D. Cal. May 9, 1996) ("UPS has registered and continuously used a number of marks, including the block letters 'UPS.' UPS's marks have attained incontestable status.").

/////

/////

/////

DLA PIPER US LLP
SAN DIEGO

CHGO1\31248828.4

08-CV-1383 LAB (BLM)

2.    ***Defendants' Continued Use Of The Marks Is Likely To Confuse Consumers.***

Because the Marks are *prima facie* valid, in order to prove trademark infringement under Section 43(a) of the Lanham Act, MBE need only establish that the marks at issue are likely to be confused with the Marks. *Applied Info. Sci. Corp.*, 511 F.3d at 970. Here, there can be no question that Defendants' continued, unauthorized use of the exact Marks, at the UpBC locations, on store signage and on transaction receipts, will cause consumer confusion. Accordingly, Defendants' conduct constitutes trademark infringement in violation of Section 43(a) of the Lanham Act.

The Ninth Circuit employs an eight-factor test (the "*Sleekcraft*" factors) to determine the likelihood of confusion: (1) strength of the marks; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels; (6) degree of consumer care; (7) defendant's intent; and (8) likelihood of expansion. *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 631 (9th Cir. 2005); *see also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). Where, as here, the defendant uses exact copies of plaintiff's distinctive marks[1] to offer competing goods to the same customer base, the first five *Sleekcraft* factors are satisfied. *Au-Tomotive Gold, Inc. v. Volkswagen of America, Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006); *accord Brookfield Communications*, 174 F.3d at 1054 ("the more similar the marks in terms of appearance, sound, and meaning, the greater the likelihood of confusion."). Indeed, such cases present an easy analysis in terms of likelihood of confusion. *Au-Tomotive Gold*, 457 F.3d at 1076; *accord Lozano Enters. v. LA Opinion Publishing Co.*, No. 96-cv-5969, 1997 U.S. Dist. LEXIS 20372, at *9 (C.D. Cal. July 30, 1997) ("Where … the defendant uses the identical mark on competitive goods …, the confusion test … is open and shut.").

In this case, because Defendants are actually using the Marks in conducting a competing business, the court need not examine all of the *Sleekcraft* factors. *See Surfvivor*, 406 F.3d at 631

---

[1] In *United Parcel Service of America, Inc. v. Package America, Inc.*, No. 96-cv-01252, 1996 WL 376610 (N.D. Cal. May 9, 1996), the court found that "UPS's trademarks are strong": "[T]he marks have been used extensively by UPS for over sixty years, and have a high level of public recognition." *Id.* at *2.

-9-

1  (discussing that courts may examine some or all of the factors, depending on their relevance and

2  importance); *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002). ("The list

3  of factors is not a score-card-whether a party wins a majority of the factors is not the point. Nor

4  should the factors be rigidly weighed; we do not count beans."). In any event, the last three

5  *Sleekcraft* factors also weigh in favor of finding a high degree of customer confusion.

6       The sixth *Sleekcraft* factor, degree of consumer care, is analyzed on a sliding scale:

7  "Confusion is less likely where buyers exercise care and precision in their purchases, such as for

8  expensive or sophisticated items." *Au-Tomotive Gold*, 457 F.3d at 1076; *see Abercrombie &*

9  *Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 634-35 (9th Cir. 2007) (discussing that when the

10  relevant customers are professional buyers, they are less likely to be confused than are ordinary

11  consumers). The cost of packing and shipping services makes it less likely that the typical buyer

12  exercising ordinary caution will show a high degree of care, and therefore, there is a high

13  likelihood of customer confusion.

14       The seventh *Sleekcraft* factor, defendant's intent, also establishes that Defendants' use of

15  the Marks will cause a high likelihood of customer confusion. "When the alleged infringer

16  knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can

17  accomplish his purpose: that is, that the public will be deceived." *Abercrombie & Fitch*, 486 F.3d

18  at 637 (quoting *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1148 (9th Cir. 2002)). In this

19  case, because the public will likely be deceived by Defendants' use of the Marks in the UpBC

20  locations without Plaintiff's authorization or consent, on store signage and on transaction receipts,

21  there is a high likelihood of customer confusion.

22       Finally, the eighth *Sleekcraft* factor, likelihood of expansion, favors finding that there is a

23  high likelihood of customer confusion. "Inasmuch as a trademark owner is afforded greater

24  protection against competing goods, a 'strong possibility' that either party may expand his

25  business to compete with the other will weigh in favor of finding that the present use is

26  infringing." *Sleekcraft Boat*s, 599 F.2d at 354. Here, at least two of Defendants' UpBC locations

27  had the "UPS" signage prominently displayed both in its front window and inside the store on a

28  ///

1   banner that also states that the location is an ASO.  (Verified Compl. ¶ 41; Pemberton Decl. ¶¶ 5-

2   6, Ex. 1.)

3         Although courts do not "bean count," it is significant that all of the eight *Sleekcraft* factors

4   support a likelihood of confusion.  *See Au-Tomotive Gold*, 457 F.3d at 1076 (stating that it was

5   "significant that six of the eight" factors supported likelihood of confusion; "the remaining two

6   [were] either neutral or irrelevant.").  More importantly, the strength of the Marks, Defendants'

7   intentional and exact copying of the Marks, and the direct competition for a specific and limited

8   consumer group, all weigh heavily in favor of a likelihood of confusion finding.

9         Therefore, MBE is likely to succeed on its trademark claim because Defendants have

10  continued to use the Marks to run a postal, packaging, business and communication retail service

11  center, without authorization to use such Marks.  It is inevitable that consumers will be confused

12  into believing that the UpBC locations are authorized UPS ASOs and are similarly authorized to

13  use the Marks in connection with transaction receipts issued at such locations, when in actuality,

14  they are not authorized to do so.  In fact, the leading commentator on trademarks calls such cases

15  "open and shut."  3 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23.3 (4th ed.

16  2002).

17      **B.**    **MBE WILL SUFFER IRREPARABLE HARM IF THE REQUESTED TEMPORARY**
    **RESTRAINING ORDER IS NOT GRANTED AND THERE IS NO ADEQUATE LEGAL**
18  **REMEDY.**

19        In the instant case, Defendants are violating Plaintiff's Marks with full knowledge that

20  they do not have permission to use those marks.  Defendants are obviously doing this for profit

21  inasmuch as they are using the Marks in connection with a business enterprise.  MBE's likelihood

22  of success, as well as the fact that Defendants are violating Plaintiff's Marks, are sufficient

23  grounds to presume that MBE is likely to suffer irreparable harm under controlling precedent.

24        If a plaintiff establishes that the defendant's trademark infringement is likely to cause

25  consumer confusion, courts will presume, as a matter of law, that the plaintiff will suffer

26  irreparable harm to its reputation and goodwill.  *Brookfield Communications*, 174 F.3d at 1066;

27  *Apple Computer, Inc. v. Formula Int'l, Inc.*, 725 F. 2d 521, 525 (9th Cir. 1984); *see also Sunward*

28  *Electronics, Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004) ("[W]hen in the licensing context

1   unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is

2   automatic."). Where, as here, a plaintiff has demonstrated the likelihood of success on trademark

3   claims, irreparable harm must be presumed. *See Johnson Controls, Inc. v. Phoenix Control Sys.,*

4   *Inc.*, 886 F.2d 1173, 1174 (9th Cir. 1989) (citing *Apple*, 725 F. 2d at 525).

5        MBE has demonstrated irreparable harm even absent this presumption, however.  Plaintiff

6   has invested millions of dollars over many years to establish its Marks in connection with its

7   global mail and parcel receiving, packaging and shipping services and small business offerings.

8   The worldwide recognition of the Marks, and the high quality associated with them, enables MBE

9   to be the predominant leader in this industry.  (Verified Compl. ¶ 24; Higginson Decl. ¶ 7.)  The

10  ability to protect the Marks by controlling both who uses them and how they are used is critical to

11  MBE's success.  (Verified Compl. ¶ 24-26, 51; Higginson Decl. ¶¶ 16-17.)  Defendants are using

12  Plaintiff's Marks to market and sell similar services in the same industry.  In doing so, they use

13  the Marks in such a manner as to deceptively create the impression that they are ASOs. *See*

14  *Nissan Motor Co., Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1164 (C.D. Cal. 2000)

15  (holding that "irreparable injury [was] also apparent because the defendant [ ] trad[ed] on the

16  plaintiffs' goodwill and divert[ed] potential Nissan car customers to other websites.").  Because

17  they are not ASOs, however, MBE cannot control how Defendants use or present the Marks, the

18  quality of the service or product Defendants provide, or any of the other factors that can adversely

19  affect the goodwill and value of the Marks.

20       Accordingly, Defendants' infringing conduct establishes a likelihood of confusion that, in

21  and of itself, satisfies MBE's burden of demonstrating irreparable harm.  There is also a

22  presumption of irreparable harm because MBE is likely to prevail on the merits of its Section

23  43(a) Lanham Act claim.  Finally, irreparable injury is apparent because Defendants are trading

24  on MBE's goodwill.

25       **C.    THE BALANCE OF HARDSHIPS TIPS SHARPLY IN MBE'S FAVOR.**

26       Not only is MBE irreparably harmed by Defendants' continued unauthorized use of the

27  Marks, but the balance of hardships tips sharply in MBE's favor.  In trademark infringement

28  cases, where, as here, the plaintiff establishes a likelihood of consumer confusion, courts

presume, as a matter of law, that the balance of hardships sharply favors the plaintiff. *Resource Lenders, Inc. v. Source Solutions, Inc.*, 404 F. Supp. 2d 1232, 1249 (E.D. Cal. 2005). As a willful infringer, Defendants are entitled to little equitable consideration. *See Helene Curtis Indus., Inc. v. Church & Dwight Co.*, 560 F.2d 1325, 1333 (7th Cir. 1977) (the hardship of requiring one who willfully infringes another's mark to cease that infringement "merit[s] little equitable consideration."). "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l, Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). Plainly, that is because "[o]ne who adopts the marks of another for similar goods acts at his own peril" because he has no claim to the profits or advantages derived thereby. *Burger King Corp. v. Majeed*, 805 F. Supp. 994, 1006 (S.D. Fla. 1992).

Moreover, in intellectual property actions "where the plaintiff has made a strong showing of likely success on the merits," the balance of hardships issue "cannot be accorded significant – if any – weight" in determining whether or not to enjoin the use of infringing products. *Cadence Design Sys. Inc. v. Avant! Corp.*, 125 F.3d 824, 830 (9th Cir. 1997). In sum, the balance of harms, "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n*, 929 F. Supp. 473, 478 (D.D.C. 1996); *see also id.* (collecting cases where courts found that one "who knowingly infringes another's copyright cannot complain of the harm that will befall it when properly forced to desist from its infringing activities.") (citations and quotations omitted).

In this case, the issuance of a temporary restraining order will not adversely affect any *legitimate* business operations, and Defendants will not suffer any cognizable hardship because they have no claim of right to use the Marks. *See Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135 (9th Cir. 1986) ("If the defendants sincerely intend not to infringe, the injunction harms them little."). By contrast, the harm caused to MBE by Defendants' ongoing, unauthorized use of the Marks goes "straight to the heart" of its business as well as MBE's franchise business. *Phillip Morris Inc. v. Allen Distribs.*, 48 F. Supp. 2d 844, 855 (S.D. Ind. 1999).

/////

**D.    GRANTING A TEMPORARY RESTRAINING ORDER IN FAVOR OF MBE ADVANCES THE PUBLIC INTEREST.**

Finally, the requested temporary restraining order serves the public interest. "It is well established that trademark law protects not only the private interest of the trademark owner but also the public's interest in not being confused by the infringing products." *Resource Lenders, Inc.*, 401 F. Supp. 2d at 1249. "Thus, the purchasing public is an unnamed party in every action for trademark infringement." *Phillip Morris USA Inc. v. Shalabi*, 352 F. Supp. 2d 1067, 1075 (C.D. Cal. 2004). Here, the issuance of a temporary restraining order would serve the public interest by ensuring that consumers are not misled. Consequently, for all of the foregoing reasons, a temporary restraining order should issue to protect MBE's legitimate interests in the Marks.

## CONCLUSION

Mail Boxes Etc., Inc., for the forgoing reasons, respectfully requests the following relief pending further order of Court:

A.    A temporary restraining order, enjoining Defendants, and their agents, servants and employees, and those persons in active concert or participation with them from:

1.    using or displaying the Marks, or any other logos, symbols or trade dress in connection with advertising, distribution, or display for sale of any product or service;

2.    making, in any manner whatsoever, any statement or representation, or performing any act, likely to lead members of the public to believe that defendants' store is in any manner, directly or indirectly, associated, affiliated, connected with, licensed, sponsored, authorized or approved by Plaintiffs;

3.    taking any action, directly or indirectly, in any form or manner whatsoever, that is likely to dilute the distinctive quality of Plaintiffs' famous registered Marks or otherwise taking any action likely to cause tarnishment or disparagement to Plaintiffs' business reputation;

4.    otherwise infringing UPS' or MBE's trade name, trademark or service marks, or otherwise competing unfairly with Plaintiffs in any manner;

B.    An order requiring defendants to file with the Court and to serve upon MBE within ten (10) days after entry of any temporary restraining order, a written report, under oath, setting forth the manner in which defendants have complied with that order;

C.    An award of attorneys' fees and costs; and

D.    Such other and further relief as the Court deems just and proper.

Dated:  August 6, 2008

DLA PIPER US LLP

By /s/ Timothy S. Blackford

Attorney for Plaintiffs
Mail Boxes Etc., Inc. and
United Parcel Service of America, Inc.
tim.blackford@dlapiper.com

1    TIMOTHY S. BLACKFORD (Bar No. 190900)
    VERONICA L. JACKSON (Bar No. 243095)
2    DLA PIPER US LLP
    401 B Street, Suite 1700
3    San Diego, CA 92101-4297
    Tel: 619.699.2700
4    Fax: 619.699.2701

5    SAMUEL B. ISAACSON (*Pro Hac Vice*)
    PETER M. ELLIS (*Pro Hac Vice*)
6    DLA PIPER US LLP
    203 N. LaSalle Street, Suite 1900
7    Chicago, IL 60601-1263
    Tel. 312.368-4000
8    Fax: 312.236-7516

9    Attorney for Plaintiffs
    MAIL BOXES ETC., INC. and UNITED PARCEL
10   SERVICE OF AMERICA, INC.

11

               UNITED STATES DISTRICT COURT
12

            SOUTHERN DISTRICT OF CALIFORNIA
13

14   MAIL BOXES ETC., INC., and UNITED      CASE NO. 08-CV-1383 LAB (BLM)
    PARCEL SERVICE OF AMERICA, INC.
15                            **DECLARATION OF PETER M. ELLIS IN**
       Plaintiffs,               **SUPPORT OF MAIL BOXES ETC., INC.'S**
16                            ***EX PARTE* APPLICATION FOR**
       v.                       **TEMPORARY RESTRAINING ORDER**
17
    UNITED POSTAL BUSINESS CENTER,     Date: August 18, 2008
18   JOSEPH CHAN, individually, STANLEY    Time: 12:00 p.m.
    CHAN, individually,                   Judge: Hon. Larry Burns
19                              Place: Courtroom 9
       Defendants.
20                              **ORAL ARGUMENT REQUESTED**

21

22

23

24

25

26

27

28

1    I, Peter M. Ellis, declare under penalty of perjury as follows:

2    1.    I am a partner with DLA Piper US LLP, counsel of record for Plaintiffs Mail

3    Boxes Etc., Inc. ("MBE") and United Parcel Service of America, Inc.'s ("UPS") in the above-

4    captioned action. I am a member of the bar of the State of Illinois and have been admitted *pro*

5    *hac vice* in this action to practice before this Court. I have personal knowledge of each of the

6    facts set forth in this declaration and if required, could and would competently testify thereto.

7    2.    On August 6, 2008, I contacted Defendant Joseph Chan by telephone and gave him

8    the following notice: "Mail Boxes Etc., Inc. will be appearing on Monday, August 18, 2008 at

9    12:00 p.m. or as soon thereafter as the matter may be heard before the Honorable Larry Burns of

10   the Southern District Court, located at U.S. District Court 940 Front Street, San Diego, California,

11   92101, for a temporary restraining order restraining you from using MBE's trademarks without

12   authorization." I also indicated that, given the strong preference to allow parties opposing

13   temporary restraining orders a reasonable opportunity to file an opposition embodied in Rule 5 of

14   the Chamber Rules for the Honorable Larry Burns, "Defendants could oppose the *ex parte*

15   application but had to do so by mid-day on August 13, 2008; a copy of any opposition must also

16   be provided to Judge Burns in chambers by that deadline."

17   3.    I attach hereto supporting papers for the *ex parte* application, including the verified

18   complaint and exhibits, the Application and Memorandum of Points and Authorities in Support,

19   the Declarations of Don Higginson, Nancy Pemberton, Robert D. Rodriguez, and Peter M. Ellis

20   and all exhibits. These documents were sent out for personal service on Defendants on August 6,

21   2008.

22   I declare under penalty of perjury under the laws of the State of California and the United

23   States of America that the foregoing is true and correct.

24   Executed this 6th day of August 2008, at Chicago, Illinois.

25

26   _____
     PETER M. ELLIS

27

28

TIMOTHY S. BLACKFORD (Bar No. 190900)
VERONICA L. JACKSON (Bar No. 243095)
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: 619.699.2700
Fax: 619.699.2701

SAMUEL B. ISAACSON (*Pro Hac Vice*)
PETER M. ELLIS (*Pro Hac Vice*)
DLA PIPER US LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL 60601-1263
Tel. 312.368-4000
Fax: 312.236-7516

Attorney for Plaintiffs
MAIL BOXES ETC., INC. and UNITED PARCEL
SERVICE OF AMERICA, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIL BOXES ETC., INC., and UNITED PARCEL SERVICE OF AMERICA, INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED POSTAL BUSINESS CENTER, JOSEPH CHAN, individually, STANLEY CHAN, individually,<br><br>Defendants. | CASE NO. 08-CV-1383 LAB (BLM)<br><br>**DECLARATION OF DON HIGGINSON IN SUPPORT OF MAIL BOXES ETC., INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date: August 18, 2008<br>Time: 12:00 p.m.<br>Judge: Hon. Larry Burns<br>Place: Courtroom 9<br><br>**ORAL ARGUMENT REQUESTED** |

I, Don Higginson, declare:

1.    I am over the age of 18.  I have personal knowledge of the matters set forth below, and if called and sworn as a witness, I could and would testify competently and from personal knowledge as to the following matters.

2.    I am currently Plaintiff Mail Boxes Etc., Inc.'s ("MBE") Senior Vice President of Franchise Relations.  In April 1992, I was Senior Franchise Counsel in the MBE Legal Department.  In my former capacity as Senior Franchise Counsel, and in my current capacity as Senior Vice President, I am familiar with the training, resources, and support that MBE provides to its franchisees.

3.    MBE is the world's largest franchisor of independently owned and operated postal, business and communications centers, with more than 800,000 mailbox holders in the United States and thousands of locations worldwide, offering mail and parcel receiving, packaging, and shipping services and providing small businesses with a wide range of products and services across the United States and throughout the world.

4.    Throughout its existence, MBE has offered and provided services including: mailbox services with 24 hour access; copy services; binding and laminating services; specialty paper services; fax services; postal services; parcel shipping; freight shipping; packaging services; sale of shipping, packaging, mailing supplies and office supplies; printing services; notary services; passport photograph services; computer time rental; online services; among other services, all identified and promoted to the general public under the trademark, service marks, and trade names MAIL BOXES ETC ®., MBE MAIL BOXES ETC., and more recently, The UPS Store ®.

5.    UPS is the owner of, *inter alia*, the following trademark and service mark registrations issued by the United States Patent and Trademark Office for the following trademarks and service marks, which have not been canceled, are now and have been valid at all times pertinent, and are in full force and effect (collectively referred to herein as the "Marks"):

/////

/////

| REGISTRATION /APPLICATION NUMBER | DESCRIPTION OF MARK | PRINCIPAL OR SUPPLEMENTAL REGISTER | REGISTRATION DATE | CLASS |
|---|---|---|---|---|
| 78/818,815 | TUPSS | Principal | Pending | 35,39 |
| 2,884,954 | THE UPS STORE | Principal | Sept. 14, 2004 | 9, 35, 38, 39 |
| 76/442,507 | UPS STORE | Principal | Pending | 9 |
| 76/491,153 | UPS STORE | Principal | Pending | 35, 39 |
| 78/818,815 | TUPSS | Principal | Pending | 36 |
| 2,978,624 | UPS & Stylized Shield Device (b/w) | Principal | July 26, 2005 | 36 |
| 2,978,625 | UPS & Stylized Shield Device (color) | Principal | July 26, 2005 | 39 |
| 2,867,999 | UPS & Stylized Shield Device (b/w) | Principal | July 27, 2005 | 39 |
| 2,868,000 | UPS & Stylized Shield Device (color) | Principal | July 27, 2004 | 9, 16, 22, 35, 38, 42 |
| 2,973,108 | UPS & Stylized Shield Device (b/w) | Principal | July 19, 2005 | 9, 16, 25, 35, 38, 42 |
| 2,981,794 | UPS & Stylized Shield Device (color) | Principal | August 2, 2005 | 9, 16, 25, 35, 38, 42 |
| 2,973,599 | UPS & Stylized Shield Device (color) | Principal | July 19, 2005 | 35, 36, 41 |
| 2,965,392 | UPS & Stylized Shield Device (b/w) | Principal | July 5, 2005 | 35, 36, 41 |
| 78/441,655 | UPS & Stylized Shield Device (b/w) | Principal | October 17, 2006 | 24, 28 |
| 2549434 | MBEMAIL | Principal | March 19, 2002 | 38 |
| 2348287 | MBE | Principal | May 9, 2000 | 35 |
| 1505212 | MBE MAIL BOXES ETC Design | Principal | September 20, 1988 | 39 |
| 1726118 | MBE & Design | Principal | October 20, 1992 | 35, 38, 39 |

/////

2

1        6.     UPS' registration of the Marks with the United States Patent and Trademark

2  Office grants them "incontestable" status under the Lanham Act, 15 U.S.C. §1065. UPS is the

3  current owner of the Marks listed above and has licensed the use of those Marks through affiliates

4  to MBE.

5        7.     With almost 4,200 Mail Boxes Etc. and The UPS Store™ franchises, MBE is the

6  predominant leader in this industry. Through its more than twenty years of experience, MBE has

7  developed unique, proprietary business knowledge upon which the franchisee business model is

8  specifically formulated. This information is shared with MBE's carefully selected franchisees

9  through training and continuous business support, and provides the foundation upon which MBE

10  franchisees successfully operate postal, packaging and communications centers in markets

11  throughout the United States and abroad.

12        8.     MBE grants franchises to qualified persons to own and operate franchise centers at

13  specific locations and grants limited, conditional licenses to use MBE's proprietary trade names,

14  trade and service marks, logos, know-how and expertise within an exclusive territory designated

15  in the franchise agreement.

16        9.     The postal, packaging, and communications business is complicated and requires

17  expertise and knowledge not known to the general public. Examples of the aforementioned

18  include, but are not limited to: (a) developing detailed familiarity with the products, services and

19  terminology of the industry, (b) understanding which services and products generate the highest

20  commercial margins, (c) learning how to maximize these potential profit centers, (d) developing

21  expertise in alternative shipping materials and the art of properly packaging any item regardless

22  of size, shape or other challenging characteristics, (e) amassing reliable working knowledge of the

23  rules and regulations relating to sizes, weights, prohibited items and international requirements

24  for shipping, (f) learning how to handle claims for lost and broken shipped items appropriately,

25  and (g) understanding how to operate complex machinery, including industrial copy machines,

26  facsimile, binding and laminating devices and passport photography equipment.

27  /////

28  /////

10. New franchisees frequently have little or no background in the postal, packaging, and communications business. Accordingly, MBE must train all its franchisees in every aspect necessary to run a successful MBE Center.

11. From the onset of the franchise relationship, MBE assists its new franchisees with choosing the site location for their MBE Center. Using marketing studies and complex demographic models developed by MBE, MBE can identify the most ideal location within a given territory in which to locate the new franchisee's MBE Center.

12. MBE provides extensive initial and continued training to its franchisees. At the outset, MBE requires the mandatory attendance of every franchisee at MBE University, which provides new franchisees with an intensive "crash-course," immersing students in all of the critical information they need to open and successfully operate an MBE franchise. In the MBE University training curriculum, new franchisees learn the business management, retail and sales skills specific to this rather unique industry that MBE has developed over the last 20 years.

13. Among other things, MBE conveys the following proprietary information and expertise to new franchisees to equip them with the necessary skills to operate a successful postal, packaging and communications center: (a) MBE's business model, (b) MBE's product and service pricing systems, (c) MBE's customer service methods, (d) MBE's business strategies, (e) MBE's preferred vendors, (f) MBE's marketing methods, (g) MBE's advertising theory and policies, (h) MBE's accounting and record-keeping methods, (i) effective approaches for hiring, firing and managing employees, (j) MBE's proven sales methods for its products and services, and (k) virtually every other business and technical skill needed to operate a postal, packaging and communications center on a day-to-day basis.

14. MBE loans to each franchisee a copy of its confidential operational manual which contains information on supplies, merchandise, sales, services, equipment, marketing, and advertising. In addition, franchisees have access to MBE's proprietary pricing information, record keeping systems, accounting information, training programs, merchandising information and advertising information, as well as marketing and demographics specific to any given franchisee's area.

4

15.     MBE leases to each franchisee its MBE Business Management System. This copyrighted Business Management System allows franchisees to track and sort royalty, accounting, and cash register data. The MBE Business Management System provides the franchisee with the complete accounting, administrative, and financial computer system needed to operate its MBE Center.

16.     MBE imparts all of this to its franchisees solely to facilitate their efforts to operate an MBE franchise with the greatest level of customer service quality and financial success. MBE protects a large percentage of the aforesaid information as confidential trade secrets. As such, MBE requires the confidentiality of such information in its Franchise Agreement and mandates the return of all such information at the end of its relationship with a franchisee. MBE operates with the expectation that it is contractually and legally protected from any improper use of its trade secrets.

17.     The operation of a store utilizing the Marks, which sells substantially products and services, confuses the local customer base into believing that the business is an authorized UPS shipping outlet or associated with the MBE network. MBE's inability to ensure the maintenance of its high standards of service and quality of such business risks irreparably harming and diluting its brand, image and goodwill.

18.     The continued operation of postal, packaging and communications centers, offering similar products, services and means of doing business, in stores that claim to be authorized shipping outlets but are not, and without authorization use the Marks, makes it impossible from a practical standpoint for MBE to properly protect its interests in the Marks and other intellectual property.

19.     On July 1, 2008, a cease and desist letter was sent to the Chans demanding that, among other things, the Chans cease all unauthorized use of Plaintiffs' Marks. A true and correct copy of the July 1, 2008 Cease and Desist Letter is attached hereto as Exhibit 1.

20.     Despite this warning, the Chans have continued in their unauthorized use of the Marks in connection with their UpBC businesses.

/////

DLA PIPER US LLP
SAN DIEGO        CHGO1\31251205.2                                    08-CV-1383 LAB (BLM)

1    I declare under penalty of perjury under the laws of the State of California and the United

2  States of America that the foregoing is true and correct.

3    Executed this __5th__ day of August 2008, at San Diego, California.

4

5                                  DON HIGGINSON

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DLA PIPER US LLP
San Diego

CHGO1\31251205.2                                          08-CV-1383 LAB (BLM)

.

# EXHIBIT 1

DLA PIPER

DLA Piper US LLP
203 North LaSalle Street, Suite 1900
Chicago, Illinois 60601-1293
www.dlapiper.com

Peter M. Ellis
peter.ellis@dlapiper.com
T  312.368.2197
F  312.251.5813

July 1, 2008

**FACSIMILE AND UPS OVERNIGHT DELIVERY**

Stanley and Joseph Chan
180 Golf Club Blvd.
Pleasant Hill, CA 94523

Re:     **CEASE AND DESIST:** *Regarding MBE Franchise Center 2701 at 180 Golf Club Blvd., Pleasant Hills, CA 94523*

Dear Messrs. Stanley and Joseph Chan:

We have been retained by Mail Boxes Etc., Inc. ("MBE") to represent MBE in connection with its potential claims against you. It has recently come to our attention that you are operating an independent packing and shipping business under the name "United postal Business Center" ("UpBC") in violation of your franchise agreement for The UPS Store® Center No. 2701 (the "Franchise Agreement"). Based upon information provided to MBE and the UpBC website, UpBC offers services competitive with, and substantially similar to, those offered by MBE Franchise Center 2701 and other MBE Franchise Centers, including, but not limited to: packing; shipping; and mail box rentals. In connection therewith, UpBC maintains the following business locations:

- 113 Estalilio Ave., San Leandro, CA 94577;

- 2590 Durant Ave., Berkley, CA 94704;

- 180 Golf Club Blvd., Pleasant Hill, CA 94523; and until recently

- 733 Stevenson Street, San Francisco, CA 94105.

As you are well aware, 180 Golf Club Blvd. is, in fact, the designated location of The UPS Store® Center 2701 and yet, you are actively advising MBE customers that the business is both a UpBC store *and* a The UPS Store®. Further, the two additional current UpBC locations are located within close proximity to other MBE Centers. Operation of each of these UpBC stores constitutes a material breach of your obligations under the Non-Competition and Non-Solicitation Agreement (the "Non-Competition Agreement") executed in connection with the Franchise Agreement. Specifically, this conduct violates the in-term contractual obligations of the Non-Competition Agreement, not to "own, maintain, engage in, be associated with, be employed by, advise, assist, invest in, be landlord to, franchise, make loans to or have any interest in any business which is the same or competitive with or substantially similar to any Mail Boxes Etc. or The UPS Store® Center." Additionally, we have been advised that you are improperly processing UPS shipments from your UpBC business utilizing your MBE franchisee UPS Shipping number in violation of your UPS Contract Carrier Agreement.

As a result of your material breaches of the Non-Competition Agreement and Contract Carrier Agreement, you are also in violation of the Franchise Agreement. Accordingly, **MBE hereby gives notice of material default under the Franchise Agreement and reserves its right to terminate the Franchise**

**Exhibit 1, Page 1**



Stanley and Joseph Chan
July 1, 2008
Page Two

**Agreement immediately without further notice as well as all rights associated therewith, including enforcement of all post-termination obligations.**

Furthermore, it is our understanding that you are utilizing MBE's proprietary trade dress and operating systems (including certain signage, printed receipts and the MBE Mailbox Service Agreement, among other things) in connection with your operation of at least one of the UpBC locations. This conduct constitutes a violation of federal and state trademark laws as well as trade secret infringement. MBE demands that you immediately cease all unauthorized use of its Marks and Systems.

MBE will not tolerate your unauthorized use of the MBE Marks and Systems or blatant breach of the Non-Competition Agreement and UPS Contract Carrier Agreement. Consequently, please be advised that if you do not immediately take steps to cease all violations of the Franchise Agreement, Non-Competition Agreement and Contract Carrier Agreement, MBE will immediately, without further notice, terminate your Franchise Agreement and seek to enforce its legal rights by filing a lawsuit to protect its trademarks, trade names, trade dress and copyrights and to enforce the Non-Competition Agreement. MBE will instruct your area franchisee to visit Center 2701 and the UpBC locations within the next five (5) days to confirm your compliance with this Cease & Desist notice.

Please give this matter your immediate attention.

Very truly yours,

DLA Piper US/LLP

Peter M Ellis

cc:    Mail Boxes Etc., Inc.

**Exhibit 1, Page 2**

1  TIMOTHY S. BLACKFORD (Bar No. 190900)
   VERONICA L. JACKSON (Bar No. 243095)
2  DLA PIPER US LLP
   401 B Street, Suite 1700
3  San Diego, CA  92101-4297
   Tel:  619.699.2700
4  Fax:  619.699.2701

5  SAMUEL B. ISAACSON (*Pro Hac Vice*)
   PETER M. ELLIS (*Pro Hac Vice*)
6  DLA PIPER US LLP
   203 N. LaSalle Street, Suite 1900
7  Chicago, IL  60601-1263
   Tel.  312.368-4000
8  Fax:  312.236-7516

9  Attorney for Plaintiffs
   MAIL BOXES ETC., INC. and UNITED PARCEL
10 SERVICE OF AMERICA, INC.

11                    UNITED STATES DISTRICT COURT

12                  SOUTHERN DISTRICT OF CALIFORNIA

13

14 MAIL BOXES ETC., INC., and UNITED        CASE NO.  08-CV-1383 LAB (BLM)
   PARCEL SERVICE OF AMERICA, INC.
15                                          **DECLARATION OF NANCY**
             Plaintiffs,                    **PEMBERTON IN SUPPORT OF MAIL**
16                                          **BOXES ETC., INC.'S APPLICATION FOR**
                                            **TEMPORARY RESTRAINING ORDER**
17      v.

18 UNITED POSTAL BUSINESS CENTER,           Date:  August 18, 2008
   JOSEPH CHAN, individually, STANLEY       Time:  12:00 p.m.
19 CHAN, individually,                      Judge:  Hon. Larry Burns
                                            Place:  Courtroom 9
             Defendants.
20                                          **ORAL ARGUMENT REQUESTED**

21

22

23

24

25

26

27

28

I, Nancy Pemberton, being first duly sworn upon my oath, state:

1.      I am an adult person over the age of 18 years old.  I have personal knowledge of the matters set forth below and can competently testify to them if and when called upon to do so.

2.      I am the sole proprietor of Pemberton and Associates, a private investigative and mitigation specialist company located at 600 Townsend Street, Suite 329E, San Francisco, CA 94103.  I have been providing private investigative services for twenty years.

3.      On July 23, 2008, I was contacted and retained by counsel from the law firm of DLA Piper US LLP to perform investigative services at three California Bay Area postal, business and communications centers operating under the trade name of United postal Business Services ("UpBC").

4.      Thereafter, on that same date, at my direction, I caused an investigator associated with my office to visit the three UpBC shipping centers located at (1) 2590 Durant Avenue, Berkeley, CA; (2) 133 Estudillo Avenue, San Leandro, CA; and (3) 180 Golf Club Road, Pleasant Hill, CA, respectively.

5.      During the visits to the three UpBC locations, I instructed my colleague to, among other things, take photographs of the inside and exterior of each location.  A true and correct copy of photographs taken at 2590 Durant Avenue, Berkeley, CA and 133 Estudillo Avenue, San Leandro, CA locations are attached hereto as Exhibit 1.

6.      These photographs illustrate that the UpBC center located at 2590 Durant Avenue, Berkeley, CA has the "UPS" signage prominently displayed both in its front window and inside the store on a banner that also states that the location is an "Authorized Shipping Outlet."

7.      Similarly, the photographs illustrate that the UpBC center located at 133 Estudillo Avenue, San Leandro, CA displays "UPS" signage on the exterior of that location.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 6th day of August 2008, at San Francisco, California.

NANCY PEMBERTON
-1-

# EXHIBIT 1



# United postal Business Center



## Freight/Shipping
## Packaging Supplies
## Mailbox Rentals

| | |
|---|---|
| Notary | Passport Photo |
| Key Copy | Finger Print |
| Fax | Copy & Bind |
| Print | Laminate |
| Scan | Bulk Mail |

**UNITED STATES POSTAL SERVICE** ®





TIMOTHY S. BLACKFORD (Bar No. 190900)
VERONICA L. JACKSON (Bar No. 243095)
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA  92101-4297
Tel:  619.699.2700
Fax:  619.699.2701

SAMUEL B. ISAACSON (*Pro Hac Vice*)
PETER M. ELLIS (*Pro Hac Vice*)
DLA PIPER US LLP
203 N. LaSalle Street, Suite 1900
Chicago, IL  60601-1263
Tel.  312.368-4000
Fax:  312.236-7516

Attorney for Plaintiffs
MAIL BOXES ETC., INC. and UNITED PARCEL
SERVICE OF AMERICA, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAIL BOXES ETC., INC., and UNITED PARCEL SERVICE OF AMERICA, INC.<br><br>Plaintiffs,<br><br>v.<br><br>UNITED POSTAL BUSINESS CENTER, JOSEPH CHAN, individually, STANLEY CHAN, individually,<br><br>Defendants. | CASE NO.  08-CV-1383 LAB (BLM)<br><br>**DECLARATION OF ROBERT D. RODRIGUEZ IN SUPPORT OF MAIL BOXES ETC., INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER**<br><br>Date:  August 18, 2008<br>Time:  12:00 p.m.<br>Judge:  Hon. Larry Burns<br>Place:  Courtroom 9<br><br>**ORAL ARGUMENT REQUESTED** |

DLA PIPER US LLP
SAN DIEGO

CHGO1\31252075.1

08-CV-1383 LAB (BLM)

1          I Robert D. Rodriguez, being first duly sworn upon my oath, state:

2          1.      I am an adult person over the age of 18 years old. I have personal knowledge of

3    the matters set forth below and can competently testify to them if and when called upon to do so.

4          2.      I am the principle shareholder of Robert Rodriquez & Associates, LLC, a security

5    company and private investigative company located at 2269 Chestnut Street, San Francisco, CA

6    94123. I am a former United States Secret Service Special Agent with over twenty-two years of

7    investigative experience.

8          3.      On June 16, 2008, I was contacted and retained by counsel from the law firm of

9    DLA Piper US LLP to perform investigative services at three California Bay area postal,

10   business, and communications centers operating under the trade name of United postal Business

11   Services ("UpBC").

12         4.      On June 18, 2008, I caused an investigator from my office to visit the three UpBC

13   shipping centers located at (1) 2590 Durant Avenue, Berkeley, CA; (2) 133 Estudillo Avenue,

14   San Leandro, CA; and (3) 180 Golf Club Road, Pleasant Hill, CA. During the visits to the three

15   UpBC locations, I instructed my colleague to, among other things, ship a package via UPS and

16   collect transaction receipts from those transactions.

17         5.      The transaction receipt from the purchase of services on June 18, 2008 from the

18   UpBC located at 2950 Durant Avenue, Berkley CA is attached hereto as Exhibit 1.

19         I declare under penalty of perjury under the laws of the State of California and the United

20   States of America that the foregoing is true and correct.

21         Executed this 6th day of August 2008, at San Francisco, California.

22

23                                                   ROBERT D. RODRIGUEZ

24

25

26

27

28

# EXHIBIT 1

```
**************** SALE *******************
            Mail Boxes Etc.
    Making Business Easier.  Worl
dwide.
**********************************************
Shift:0527 Drw:01 ID:489 Clerk:Connica
6/18/2008                        11:37:51
            Center #0
         2590 Durant Ave
        Berkeley, CA 94704
        Phone 510-849-1305


Qty  Description        Unit        Ext

  1 Shipping           20.00       20.00


               Sub Total:          20.00
               Total Sale:         20.00


                  Cash:            20.00
                  Change:           0.00


    Thank You For Coming To UpBC
         Tel# 510-859-1305
         Fax # 510-859-3117


   Visit our Web Site at: WWW.MBE.COM
```

```
**************** SALE *******************
            Mail Boxes Etc.
    Making Business Easier.  Worl
dwide.
**********************************************
Shift:0527 Drw:01 ID:488 Clerk:Connica
6/18/2008                        11:36:50
            Center #0
         2590 Durant Ave
        Berkeley, CA 94704
        Phone 510-849-1305


Qty  Description        Unit        Ext

 -1 Shipping           21.66       21.66


               Sub Total:          21.66
               Total Sale:         21.66


                  Cash:            21.66
                  Change:           0.00


    Thank You For Coming To UpBC
         Tel# 510-859-1305
         Fax # 510-859-3117


   Visit our Web Site at: WWW.MBE.COM
```

**Exhibit 1, Page 1**



United Your Business Centers

Main: 133 Estudillo Avenue San Leandro, CA 94577     Tel.: 510-346-6245
Branch: 180 Golf Club Road Pleasant Hill, CA 94523     Tel.: 925-798-6849
2590 Durant Ave. Berkeley, CA 94704     Tel.: 510-849-1305
111 Quint Street, San Francisco, CA 94124     Tel.: 415-362-8282
Web Address: www.UPBC.biz     Email: Info@UPBC.biz

# "Partners in your success!"

## Shipping Order/Quotation Form
### We offer the LOWEST UPS published retail rate

Mailbox Rental, Packaging Supplies & Services, Passport Photo, Rubber Stamp, Greeting Card, Business Card & Stationary, Offset Printing, Computer & IT Services, Fax, B/W & Color Copy, Key Duplication, Mobile & Onsite Notary Public, Custom Crate & Freight Services. Authorized UPS, DHL, FedEx & USPS Shipper.

1. Please complete this form for a quote. Areas in gray will be filled in by an authorized store personnel.
2. Information you provide is confidential and will not be used in any matter beyond this transaction.
3. All quotes are estimates only and prices may change due to packing equipments and packing material weight.
4. All shipments are subject to the terms and conditions including the published responsibility for loss or damage of the shipping carrier selected by the customer.
5. You are responsible for picking up undeliverable and returned shipment(s) within 15 days at the store, otherwise you will be charged for storing and/or disposing the package(s

Your Name: **Stephen Umin**     Your Business Name (if applicable): _____

Your Phone Number and/or Email Address: 650 504 5261

Information about your shipment:

**Origination** Address (shipped from): 540 Chesterton Ave

City: Belmont     State: CA     Zip Code: 94002

**Destination** Name of Recipient: Nira Gambick     Business Name: _____

Address (shipped to): 203 W LaSalle Suite 1900

City: Chicago Chicago     State: Illinois     Zip Code: 60601

Country: USA     Phone #: _____

Shipping Carrier Desired: (UPS)     DHL     FedEx     USPS     Others (please specify)

Shipping Service Desired:     Next Day     (2nd Day)     3 Days     Ground/Economy     Others
(please specify)

| Item No. | Weight (in pounds) | Size (in inches) WxDxH | Description of Item | Amount of Insurance Coverage | Type of Packing (Circle choice if needed) | |
|---|---|---|---|---|---|---|
| 1 | 2 lbs | | | $ | Regular or Fragile | |
| 2 | 13 x 10 x 5 | | | $ | Regular or Fragile | |
| 3 | | | UPBC01 0806 8035 | $ | Regular or Fragile | |
| 4 | | | UPS Reference No. | $ | Regular or Fragile | |

Customer is solely responsible for *Amount of Insurance Coverage* and *Type of Packing* (Regular/Fragile). UPBC will not be held liable for insufficient insurance or damage/rejection of insurance claim due to inadequate packing when Regular packing is chosen or when customer packed the shipment.     **Exhibit 1, Page 2**

Quoted/Shipped By: _____     Customer Authorization to Ship: _____
File: UPBCShippingOrderForm[2].doc     Date: _____